**Anthonette TODARO, Individually and on Behalf of the Estate of Blake Edward Todaro, Appellant,**

v.

**The CITY OF HOUSTON, Appellee.**

No. 14–03–00627–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 20, 2004.

Mark E. Dykes and John W. Havins, Houston, TX, for appellants.

Andrea Chan, Houston, TX, for appellees.

Panel consists of Justices YATES, ANDERSON, and HUDSON.

## OPINION

JOHN S. ANDERSON, Justice.

In this wrongful death action, appellant Anthonette Todaro, individually and on behalf of the estate of her son, Blake Edward Todaro, appeals from the trial court's order (1) granting appellee The City of

Houston's plea to the jurisdiction and (2) dismissing Todaro's claims. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Blake Todaro died as a result of injuries sustained as he was riding his bicycle on an asphalt hiking and biking trail maintained by the City. According to the allegations in the petition, Blake encountered a steep part of the trail, which caused his bicycle to gather significant speed as it descended. When Blake reached the bottom of the steep portion, the front wheel of his bicycle struck a hole, causing Blake to fall, hit the asphalt, and sustain fatal injuries. There were no signs warning of the hole, which apparently served to gather water, which was then drained by a pipe running under the asphalt path. No allegations are made that the condition of real property effecting the injury was constructed before 1970.

Todaro sued the City. As part of the background facts, she alleged, "The defective condition of the path which caused Blake Todaro to fall to his death, was subject to the control of [the City] and [the City] knew or should of [sic] known of the dangerous condition and that such dangerous condition would not be appreciated by young children." She also set forth the following allegations in a separate section, captioned "Attractive Nuisance":

9. The portion of the City bike path upon which Blake Todaro was injured was one that the City knew or should have known would be frequented and played upon by small children. Moreover, the dangerous condition in and about the bike path was one of which the City know [sic] or should have known involved an unreasonable risk of death or serious bodily harm to Blake Todaro and children similarly situated.

10. Blake Todaro, because of his tender years, did not realize the risk involved in riding his bicycle down the hill. Plaintiff would further show that the utility, if any, to the City in eliminating the danger was slight as compared to the risk ... of injuries such as occurred to Blake Todaro as a proximate result thereof.

Todaro prayed for actual damages in an amount not to exceed $250,000.00, pre-and post-judgment interest, costs, and exemplary damages.

The City answered, asserting multiple defenses, including governmental and recreational use immunity. The City also filed a plea to the jurisdiction, in part arguing Todaro's claims were barred because (1) the acts of which Todaro complained were discretionary acts of which there is no waiver of immunity as a matter of law, (2) the doctrine of attractive nuisance was inapplicable because the case did not involve trespassing children or a device or machinery and the Texas Tort Claims Act ("Act" or "Tort Claims Act") precludes application of the doctrine,[1] and (3) Todaro failed to establish waiver of the City's immunity within the confines of the recreational use immunity statute.[2] Todaro responded, arguing the Tort Claims Act and the recreational use statute did not apply to attractive nuisance claims, a common law sovereign immunity analysis applied, and her attractive nuisance claims were not barred by common law sovereign immunity. The trial court granted the City's plea to the jurisdiction and dismissed Todaro's claims.

1. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.001.109 (Vernon 1997 & Supp.2004).

2. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 75.001 (Vernon Supp.2004).

## DISCUSSION

### Introduction and Standard of Review

Todaro presents the following three issues for review, all of which are directed at the trial court's order granting the City's plea to the jurisdiction:

1. If the Texas Tort Claims Act does not apply to a claim based on attractive nuisance, is a common law governmental immunity analysis required or is a Plaintiff completely barred from bringing suit against a municipality for claims excluded from the Tort Claims Act?

2. If the Recreational Use Statute does not apply to claims based on attractive nuisance, does a Plaintiff nonetheless have to plead claims based on willful wanton acts or gross negligence to defeat a Plea to the Jurisdiction?

3. Does the attractive nuisance doctrine apply only to a device or machinery attractive to trespassing children?

■■■ A plea to the jurisdiction is a challenge to the trial court's authority to adjudicate the subject matter of the cause of action. *City of Houston v. Lazell–Mosier*, 5 S.W.3d 887, 889 (Tex.App.-Houston [14th Dist.] 1999, no pet.). It is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000). The claims may form the context in which a dilatory plea is raised, but a court should decide the plea without delving into the merits of the case. *Id.* The purpose of a dilatory plea is not to force the plaintiff to preview its case on the merits but to establish a reason why the merits of the plaintiff's claims should never be reached. *Id.* In deciding whether to grant a plea to the jurisdiction, the trial court normally looks only to the allegations in the petition. *See id.* When reviewing a trial court's order granting a plea to the jurisdiction, we construe the pleadings in favor of the plaintiff and look to the pleader's intent. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). Our review of the trial court's ruling on a plea to the jurisdiction is *de novo*. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998).

### Governmental Immunity and Statutory Waiver thereof

■■■ The City based its plea to the jurisdiction on governmental immunity. A unit of State government is immune from suit and liability unless the State consents. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex.2003). Immunity from suit affects a court's jurisdiction and prohibits suits against a governmental unit unless the State expressly consents to the suit. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex.2003). For the Legislature to waive governmental immunity, a statute or resolution must contain a clear and unambiguous expression of the Legislature's waiver of immunity. *See id.* When determining whether the Legislature has clearly and unambiguously waived immunity from suit, we generally resolve any ambiguity in favor of retaining immunity. *Id.* at 697.

The Tort Claims Act waives a governmental unit's immunity from suit "to the extent of liability created" by the Act. TEX. CIV. PRAC. & REM.CODE ANN. § 101.025(a) (Vernon 1997); *Tex. Dept. of Transp. v. Ramirez*, 74 S.W.3d 864, 866 (Tex.2002) (per curiam). The City is a "governmental unit" for purposes of the Tort Claims Act. TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(3)(B) (Vernon Supp.2004). As explained in *Ramirez*:

The Act waives the State's immunity for, among other things, injury or death "caused by a condition or use of tangible personal or real property...." TEX. CIV.

PRAC. & REM.CODE § 101.021(2). If the dangerous condition is a "premise defect," the Act limits the State's duty to "only the duty that a private person owes to a licensee on private property." TEX. CIV. PRAC. & REM.CODE § 101.022(a). Whether a condition is a premise defect is a legal question. *State v. Burris,* 877 S.W.2d 298, 299 (Tex.1994).

74 S.W.3d at 866.

Under the Act, municipalities are liable for damages arising from a set of non-exclusive, specifically enumerated, governmental functions, including parks and zoos. *See* Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 3.02, sec. 101.0215(a), 1987 Tex. Gen. Laws 37, 47–48 (amended 1999, 2001) (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215(a) (Vernon Supp.2004)). The Act, however, does not apply to the liability for damages arising from a municipality's proprietary functions, which do not include the specifically enumerated governmental functions. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215(b), (c) (Vernon Supp.2004). The Act also does not apply to certain types of claims, for example, claims based on a governmental unit's nonperformance of a discretionary act, claims based on a theory of attractive nuisance, or torts committed before 1970. TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.056, .059, .061 (Vernon 1997).

Finally, the Tort Claims Act provides that limitation of a governmental unit's liability under the recreational use statute controls over any waiver of immunity in the Tort Claims Act: "To the extent that Chapter 75 limits the liability of a governmental unit under circumstances in which the governmental unit would be liable under this chapter, Chapter 75 controls." TEX. CIV. PRAC. & REM.CODE ANN. § 101.058 (Vernon 1997). Chapter 75 contains a complementary provision: "To the extent that this chapter limits the liability of a governmental unit under circumstances in which the governmental unit would be liable under Chapter 101, this chapter controls." TEX. CIV. PRAC. & REM.CODE ANN. § 75.003(g) (Vernon Supp.2004). Section 75.003 further provides the chapter does not affect the doctrine of attractive nuisance, but "the doctrine may not be the basis for liability of an owner, lessee, or occupant of agricultural land for any injury to a trespasser over the age of 16 years." *Id.* § 75.003(b). Chapter 75 also "does not relieve any owner, lessee, or occupant of real property of any liability that would otherwise exist for deliberate, wilful, or malicious injury to a person or to property." *Id.* § 75.003(a).

*Analysis*

 *TODARO'S ARGUMENTS.* With the preceding framework in mind, we turn now to the arguments Todaro makes in support of her three issues. In overlapping arguments, she contends (1) as a result of Texas Civil Practice and Remedies Code section 101.059, which states the Act does not apply to claims based on attractive nuisance, common law sovereign immunity analysis applies to her claims; (2) her live pleadings set forth claims for which the City has no common law immunity; (3) because the recreational use statute does not apply to claims based on attractive nuisance, she was not required to plead willful or wanton acts or gross negligence; (4) she did not allege a discretionary function (to which sovereign immunity would apply) as a basis of liability; and (5) attractive nuisance claims are not limited to a device or machinery especially alluring to trespassing children.

As discussed below, we disagree with the premise underlying her first argument, which she sets forth in support of issue one—that common law sovereign immunity applies to her claims. Because our resolution of issue one is dispositive of this ap-

peal, we need not address Todaro's remaining issues and arguments.

*TODARO'S ISSUE ONE.* In issue one, Todaro asks: If the Tort Claims Act does not apply to claims based on attractive nuisance, (a) is a common law governmental immunity analysis required or (b) is a Plaintiff completely barred from bringing suit against a municipality for claims excluded from the Tort Claims Act? In answering this question, Todaro sets forth the following propositions and authorities:

1. Under Texas Civil Practice and Remedies Code section 101.059, the Tort Claims Act "does not apply to a claim based on the theory of attractive nuisance." TEX. CIV. PRAC. & REM.CODE ANN. § 101.059 (Vernon 1997).

2. Because the Act does not apply to claims based on attractive nuisance, her claims should be determined under the common law. *Cf. City of Tyler v. Likes,* 962 S.W.2d 489, 501 (Tex.1997) (applying common law to case in which act or omission occurred before January 1, 1970); *Lawrence v. City of Wichita Falls,* 906 S.W.2d 113, 116 (Tex.App.-Fort Worth 1995, writ denied) (same); *City of Fort Worth v. Adams,* 888 S.W.2d 607, 614 (Tex. App.-Fort Worth 1994, writ denied) (same).

3. Under the common law, the establishment and maintenance of a city park was a proprietary function, and claims arising therefrom were not subject to governmental immunity. *See, e.g., Dancer v. City of Houston,* 384 S.W.2d 340, 342 (Tex. 1964) (citing cases); *see also* Christopher D. Jones, Comment, *Texas Municipal Liability: An Examination of the State and Federal Causes of Action,* 40 BAYLOR

L.REV. 595, 604–05 (1988) (discussing the proprietary-governmental distinction at common law).

4. Therefore, her attractive nuisance claims, which are based on an injury arising from the city's function in operating the park, are not subject to governmental immunity.

As the preceding structure reveals, Todaro's argument, specifically proposition two, rests on the following premise: case law interpreting the exclusion in section 101.061, which relates to acts or omissions occurring before January 1, 1970, must be applied to section 101.059, which relates to claims based on the theory of attractive nuisance, even when the act or omission did not occur before 1970. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.059, .061 (Vernon 1997). Todaro argues because both sections state the Act "does not apply" to the type of claim at issue, the ramifications of both exclusions should be the same. Therefore, she contends because courts resort to common law to decide sovereign immunity issues involving pre–1970 acts or omissions, they similarly should resort to common law to decide claims of attractive nuisance. We disagree.

█ The supreme court has cautioned, "Each of the ... exemptions ... is a distinct exemption, complete unto itself. We agree with the ... statement that courts must examine the entire [Tort Claims] Act. This rule of construction, however, does not permit courts to engraft the limitations of one statutory provision onto another." *State v. Terrell,* 588 S.W.2d 784, 788–89 (Tex.1979) (citation omitted).[3] In relying on cases construing

---

**3.** In *Terrell,* the supreme court was interpreting the predecessors to present sections 101.055 (regarding claims based on responses to emergency calls or situations) and .057

(regarding claims based on injury or death arising from civil disobedience, riot, etc.). *See State v. Terrell,* 588 S.W.2d 784, 788–89 (Tex.1979) (interpreting Act of May 14, 1969,

the section 101.061 exclusion (regarding pre–1970 acts or omissions), appellant fails to appreciate the distinction between negligent acts and omissions occurring *before* 1970 and those occurring *after* 1970.

As this court explained in *Chapman v. City of Houston,* "Clearly [section] 101.061 intended to provide for abolishment of governmental immunity without causing havoc." 839 S.W.2d 95, 99 (Tex.App.-Houston [14th Dist.] 1992, writ denied). The rationale for applying the common law for pre–1970 acts and omissions rests on the premise it would be unfair to expose a governmental entity to liability under the Act for acts or omissions for which it had previously been immune at common law. *Lawrence,* 906 S.W.2d at 116. Thus, the cases applying common law for pre–1970 acts and omissions are consistent with the presumption in favor of retaining immunity. *See Taylor,* 106 S.W.3d at 697 (regarding presumption in construction of statutes purportedly waiving sovereign immunity).

In contrast, the purpose of section 101.059 was to eliminate an area of potential governmental liability that may have existed at common law.[4] In an early draft of the Act, the Legislature abolished the doctrine of attractive nuisance only in rural areas and only in limited cases. *See* J. Bonner Dorsey, *Whither the Texas Tort Claims Act: What Remains After Official Immunity?,* 33 St. Mary's L.J. 235, 244 n. 44 (2002) (quoting Veto Message of Gov.

Preston Smith, Tex. H.B. 117, H.J. of Tex, 61st Leg., R.S. (1969)). Governor Preston Smith, however, vetoed this bill. *See id.* at 243. In his veto message, Governor Smith expressed his concern with the breadth of the total bill and the burden it imposed on Texas taxpayers. *See* Joe R. Greenhill & Thomas V. Murto III, *Governmental Immunity,* 49 Tex. L.Rev. 462, 467 (1971). Moreover, Governor Smith specifically recommended that the Legislature " '[a]bolish the doctrine of attractive nuisance as applied against governmental units in all cases.' " Dorsey, *supra* at 244 n. 44. The subsequently enacted bill did so. *See* Dorsey, *supra,* at 244; *see also* Tex. Civ. Prac. & Rem.Code Ann. § 101.059 (Vernon 1997).

*Lawrence* is the only case Todaro cites in which a court resorted to the common law to analyze an attractive nuisance claim against a city. The attractive nuisance in *Lawrence,* however, was a concrete syphon constructed before 1970, and the section 101.061 exclusion was applicable.[5] *Lawrence,* 906 S.W.2d at 115, 116. Therefore, as subsequently confirmed in *Likes,* resort to common law was appropriate under section 101.061 regardless of the implications of the section 101.059 exclusion for attractive nuisance; the common law applied because the syphon was allegedly negligently constructed before 1970. *Id.* at 116–17; see *Likes,* 962 S.W.2d at 501 (citing *Lawrence* for proposition common law

61st Leg., R.S., ch. 292 § 14(8), (9), 1969 Tex. Gen. Laws 874, 878 (subsequently repealed and recodified)) (current version at Tex. Civ. Prac. & Rem.Code Ann. §§ 101.055, .057 (Vernon 1997)).

**4.** In cases decided prior to the Tort Claims Act, however, plaintiffs asserting the doctrine of attractive nuisance against governmental units were generally not successful. *See, e.g., Bennett v. Brown County Water Imp. Dist. No. 1,* 153 Tex. 599, 272 S.W.2d 498 (1954); *Gotcher v. City of Farmersville,* 137 Tex. 12, 151 S.W.2d 565 (1941); *Woolf v. City of Dal-*

*las,* 311 S.W.2d 78 (Tex.Civ.App.-Dallas 1958, writ ref'd n.r.e.); *Murphy v. City of Rotan,* 139 S.W.2d 134 (Tex.Civ.App.-Eastland 1940, writ dism'd); *Braissaird v. Webb County,* 128 S.W.2d 475, 477 (Tex.Civ.App.-San Antonio 1939, no writ).

**5.** The exclusions and exceptions to the Tort Claims Act are set forth in sections 101.051 through 101.066. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.051 .066 (Vernon 1997 & Supp.2004).

**294**

governs causes of action occurring before January 1, 1970, the effective date of the Tort Claims Act). Without a pre–1970 act or omission supporting her claim to trigger application of the common law, Todaro's claims are subject only to the Act and its exclusions. *See Adams,* 888 S.W.2d at 614.

Given the preceding authority and considerations, we decline Todaro's invitation to apply case law construing section 101.061, relating to pre–1970 acts or omissions, to her claims based on acts or omissions occurring after 1970. Her claims are specifically excluded from being brought under the Act by section 101.059. Thus, Todaro's claims do not fall under the waiver of immunity created by the Tort Claims Act. Accordingly, we overrule Todaro's issue one.

*TODARO'S REMAINING ISSUES.* In issue two, Todaro raises questions related to application of Texas Civil Practice and Remedies Code chapter 75, commonly known as the recreational use statute. Our analysis of the City's liability, however, does not reach the recreational use statute unless we first determine that Todaro's claims fall under the waiver of immunity created by the Tort Claims Act. *City of Houston v. Morua,* 982 S.W.2d 126, 130 (Tex.App.-Houston [1st Dist.] 1998, no pet.), *overruled on other grounds by Smith v. Brown,* 51 S.W.3d 376, 381 (Tex.App.-Houston [1st Dist.] 2001, pet. denied); *see* TEX. CIV. PRAC. & REM.CODE ANN. § 75.003(g) (Vernon Supp.2004) (stating, "To the extent that this chapter limits the liability of a governmental unit under circumstances in which the governmental unit **would be liable** under Chapter 101, this chapter controls") (emphasis added). As discussed above, we concluded Todaro's claims do not fall under the waiver of immunity created by the Tort Claims Act. Accordingly, we need not reach Todaro's issue two.

In issue three, Todaro argues the fact Blake was not a trespasser or injured by a device or machinery does not preclude application of the attractive nuisance doctrine to her case. Throughout the preceding discussion, we have treated Todaro's claims as based on attractive nuisance, as she would have us do. So treated, Todaro's claims fall squarely within the exclusion of Texas Civil Practice and Remedies Code section 101.059, and Todaro's issue three presents nothing further for review.

## CONCLUSION

We conclude Todaro's claims fall within an exception to the waiver of governmental immunity in the Tort Claims Act and that her claims, based on post–1970 acts or omissions, are not to be determined under common law analysis. The trial court therefore correctly granted the City's plea to the jurisdiction and dismissed Todaro's claims based on attractive nuisance.

We affirm the judgment of the trial court.