Affirmed and Opinion filed April 20, 2004









Affirmed and Opinion filed April 20, 2004.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-03-00627-CV

____________

 

ANTHONETTE TODARO,
INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF BLAKE EDWARD TODARO, Appellant

 

V.

 

THE CITY OF
HOUSTON,
Appellee

 



 

On Appeal from the 61st
District Court

Harris County, Texas

Trial Court Cause No. 02-37672

 



 

O P I N I O N

In this wrongful death action, appellant
Anthonette Todaro, individually and on behalf of the estate of her son, Blake
Edward Todaro, appeals from the trial court=s order (1)
granting appellee The City of Houston=s plea to the
jurisdiction and (2) dismissing Todaro=s claims.  We affirm.








FACTUAL AND PROCEDURAL BACKGROUND

Blake Todaro died as a result of injuries
sustained as he was riding his bicycle on an asphalt hiking and biking trail
maintained by the City.  According to the
allegations in the petition, Blake encountered a steep part of the trail, which
caused his bicycle to gather significant speed as it descended.  When Blake reached the bottom of the steep
portion, the front wheel of his bicycle struck a hole, causing Blake to fall,
hit the asphalt, and sustain fatal injuries. 
There were no signs warning of the hole, which apparently served to
gather water, which was then drained by a pipe running under the asphalt
path.  No allegations are made that the
condition of real property effecting the injury was constructed before 1970.

Todaro sued the City.  As part of the background facts, she alleged,
AThe defective
condition of the path which caused Blake Todaro to fall to his death, was
subject to the control of [the City] and [the City] knew or should of [sic]
known of the dangerous condition and that such dangerous condition would not be
appreciated by young children.@  She also set forth the following allegations
in a separate section, captioned AAttractive
Nuisance@:

9. 
The portion of the City bike path upon which Blake Todaro was injured
was one that the City knew or should have known would be frequented and played
upon by small children.  Moreover, the
dangerous condition in and about the bike path was one of which the City know
[sic] or should have known involved an unreasonable risk of death or serious
bodily harm to Blake Todaro and children similarly situated.

10. 
Blake Todaro, because of his tender years, did not realize the risk
involved in riding his bicycle down the hill. 
Plaintiff would further show that the utility, if any, to the City in
eliminating the danger was slight as compared to the risk . . . of injuries
such as occurred to Blake Todaro as a proximate result thereof.

 

Todaro prayed for actual damages in an amount not to
exceed $250,000.00, pre-and post judgment interest, costs, and exemplary
damages.








The City answered, asserting multiple
defenses, including governmental and recreational use immunity.  The City also filed a plea to the
jurisdiction, in part arguing Todaro=s claims were
barred because (1) the acts of which Todaro complained were discretionary acts
of which there is no waiver of immunity as a matter of law, (2) the doctrine of
attractive nuisance was inapplicable because the case did not involve
trespassing children or a device or machinery and the Texas Tort Claims Act (AAct@ or ATort Claims Act@) precludes
application of the doctrine,[1]
and (3) Todaro failed to establish waiver of the City=s immunity within
the confines of the recreational use immunity statute.[2]  Todaro responded, arguing the Tort Claims Act
and the recreational use statute do not apply to attractive nuisance claims, a
common law sovereign immunity analysis applied, and her attractive nuisance
claims were not barred by common law sovereign immunity.  The trial court granted the City=s plea to the
jurisdiction and dismissed Todaro=s claims.

DISCUSSION

Introduction and Standard of Review

Todaro presents the following three issues
for review, all of which are directed at the trial court=s order granting
the City=s plea to the
jurisdiction:

1. 
If the Texas Tort Claims Act does not apply to a claim based on
attractive nuisance, is a common law governmental immunity analysis required or
is a Plaintiff completely barred from bringing suit against a municipality for
claims excluded from the Tort Claims Act?

2. 
If the Recreational Use Statute does not apply to claims based on
attractive nuisance, does a Plaintiff nonetheless have to plead claims based on
willful wanton acts or gross negligence to defeat a Plea to the Jurisdiction?

3. 
Does the attractive nuisance doctrine apply only to a device or
machinery attractive to trespassing children?

 








A plea to the jurisdiction is a challenge
to the trial court=s authority to adjudicate the subject
matter of the cause of action.  City
of Houston v. Lazell‑Mosier, 5 S.W.3d 887, 889 (Tex. App.CHouston [14th
Dist.] 1999, no pet.).  It is a dilatory
plea, the purpose of which is to defeat a cause of action without regard to
whether the claims asserted have merit.  Bland
Indep. Sch. Dist.  v. Blue, 34 S.W.3d
547, 554 (Tex. 2000).  The claims may form
the context in which a dilatory plea is raised, but a court should decide the
plea without delving into the merits of the case.  Id. 
The purpose of a dilatory plea is not to force the plaintiff to preview
its case on the merits but to establish a reason why the merits of the
plaintiff=s claims should never be reached.  Id. 
In deciding whether to grant a plea to the jurisdiction, the trial court
normally looks only to the allegations in the petition.  See id.  When reviewing a trial court=s order granting a
plea to the jurisdiction, we construe the pleadings in favor of the plaintiff
and look to the pleader=s intent. 
Tex. Ass=n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440,
446 (Tex. 1993).  Our review of the trial
court=s ruling on a plea
to the jurisdiction is de novo.  Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998).

Governmental Immunity and Statutory Waiver
thereof

The City based its plea to the
jurisdiction on governmental immunity.  A
unit of State government is immune from suit and liability unless the State
consents.  Dallas Area Rapid Transit
v. Whitley, 104 S.W.3d 540, 542 (Tex. 2003).  Immunity from suit affects a court=s jurisdiction and
prohibits suits against a governmental unit unless the State expressly consents
to the suit.  See Wichita Falls State
Hosp. v. Taylor, 106 S.W.3d 692, 696 (Tex. 2003).  For the Legislature to waive governmental
immunity, a statute or resolution must contain a clear and unambiguous
expression of the Legislature=s waiver of
immunity.  See id.  When determining whether the Legislature has
clearly and unambiguously waived immunity from suit, we generally resolve any
ambiguity in favor of retaining immunity. Id. at 697.

The Tort Claims Act waives a governmental
unit=s immunity from
suit Ato the extent of
liability created@ by the Act.  Tex.
Civ. Prac. & Rem. Code Ann. ' 101.025(a)
(Vernon 1997); Tex. Dept. of Transp. v. Ramirez, 74 S.W.3d 864, 866
(Tex. 2002) (per curiam).  The City is a Agovernmental unit@ for purposes of
the Tort Claims Act.  Tex. Civ. Prac. & Rem. Code Ann. ' 101.001(3)(B)
(Vernon Supp. 2004).  As explained in Ramirez:








The Act waives the State=s immunity for, among other things,
injury or death Acaused by a condition or use of
tangible personal or real property. . . .@  Tex. Civ. Prac. & Rem. Code ' 101.021(2).  If the dangerous condition is a Apremise defect,@ the Act limits the State=s duty to Aonly the duty that a private person
owes to a licensee on private property.@  Tex. Civ. Prac. & Rem. Code ' 101.022(a).  Whether a condition is a premise defect is a
legal question.  State v. Burris,
877 S.W.2d 298, 299 (Tex. 1994).

 

74 S.W.3d at 866.

Under the Act, municipalities are liable
for damages arising from a set of non-exclusive, specifically enumerated,
governmental functions, including parks and zoos.  See Act of June 3, 1987, 70th Leg.,
1st C.S., ch. 2, ' 3.02, sec. 101.0215(a), 1987 Tex. Gen.
Laws 37, 47B48 (amended 1999, 2001) (current version
at Tex. Civ. Prac. & Rem. Code Ann.
' 101.0215(a)
(Vernon Supp. 2004)).  The Act, however,
does not apply to the liability for damages arising from a municipality=s proprietary
functions, which do not include the specifically enumerated governmental
functions.  See Tex. Civ. Prac. & Rem. Code Ann. ' 101.0215(b), (c)
(Vernon Supp. 2004).  The Act also does
not apply to certain types of claims, for example, claims based on a
governmental unit=s nonperformance of a discretionary act,
claims based on a theory of attractive nuisance, or torts committed before
1970.  Tex.
Civ. Prac. & Rem. Code Ann. '' 101.056, .059,
.061 (Vernon 1997).








Finally, the Tort Claims Act provides
that  limitation of a governmental unit=s liability under
the recreational use statute controls over any waiver of immunity in the Tort
Claims Act:  ATo the extent that
Chapter 75 limits the liability of a governmental unit under circumstances in
which the governmental unit would be liable under this chapter, Chapter 75
controls.@  Tex. Civ. Prac. & Rem. Code Ann. ' 101.058 (Vernon
1997).   Chapter 75 contains a complementary provision:  ATo the extent that this chapter
limits the liability of a governmental unit under circumstances in which the
governmental unit would be liable under Chapter 101, this chapter controls.@  Tex. Civ. Prac. & Rem. Code Ann. ' 75.003(g) (Vernon Supp. 2004).  Section 75.003 further provides the chapter
does not affect the doctrine of attractive nuisance, but Athe doctrine may
not be the basis for liability of an owner, lessee, or occupant of agricultural
land for any injury to a trespasser over the age of 16 years.@  Id. ' 75.003(b).  Chapter 75 also Adoes not relieve any owner, lessee,
or occupant of real property of any liability that would otherwise exist for
deliberate, wilful, or malicious injury to a person or to property.@  Id. ' 75.003(a).

Analysis

Todaro=s arguments.  With the preceding framework in mind, we turn
now to the arguments Todaro makes in support of her three issues.  In overlapping arguments, she contends (1) as
a result of  Texas Civil Practice and
Remedies Code section 101.059, which states the Act does not apply to claims
based on attractive nuisance, common law sovereign immunity analysis applies to
her claims; (2) her live pleadings set forth claims for which the City has no
common law immunity; (3) because the recreational use statute does not apply to
claims based on attractive nuisance, she was not required to plead willful or
wanton acts or gross negligence; (4) she did not allege a discretionary
function (to which sovereign immunity would apply) as a basis of liability; and
(5) attractive nuisance claims are not limited to a device or machinery
especially alluring to trespassing children.

As discussed below, we disagree with the
premise underlying her first argument, which she sets forth in support of issue
oneCthat common law
sovereign immunity applies to her claims. 
Because our resolution of issue one is dispositive of this appeal, we
need not address Todaro=s remaining issues and arguments.

Todaro=s issue one.  In issue one, Todaro asks:  If the Tort Claims Act does not apply to
claims based on attractive nuisance, (a) is a common law governmental immunity
analysis required or (b) is a Plaintiff completely barred from bringing suit
against a municipality for claims excluded from the Tort Claims Act?  In answering this question, Todaro sets forth
the following propositions and authorities:








1. 
Under Texas Civil Practice and Remedies Code section 101.059, the Tort
Claims Act Adoes not apply to a claim based on the
theory of attractive nuisance.@  Tex.
Civ. Prac. & Rem. Code Ann. ' 101.059 (Vernon
1997).

2. 
Because the Act does not apply to claims based on attractive nuisance,
her claims should be determined under the common law.  Cf. 
City of Tyler v. Likes, 962 S.W.2d 489, 501 (Tex. 1997) (applying
common law to case in which act or omission occurred before January 1, 1970); Lawrence
v. City of Wichita Falls, 906 S.W.2d 113, 116 (Tex. App.CFort Worth 1995,
writ denied) (same); City of Fort Worth v. Adams, 888 S.W.2d 607, 614
(Tex. App.CFort Worth 1994, writ denied) (same).

3. 
Under the common law, the establishment and maintenance of a city park
was a proprietary function, and claims arising therefrom were not subject to
governmental immunity.  See, e.g.,
Dancer v. City of Houston, 384 S.W.2d 340, 342 (Tex. 1964) (citing
cases); see also Christopher D. Jones, Comment, Texas Municipal
Liability: An Examination of the State and Federal Causes of Action, 40 Baylor L. Rev. 595, 604B05 (1988) (discussing
the proprietary-governmental distinction at common law).

4. 
Therefore, her attractive nuisance claims, which are based on an injury
arising from the city=s function in operating the park, are not
subject to governmental immunity.








As the preceding structure reveals, Todaro=s argument,
specifically proposition two, rests on the following premise:  case law interpreting the exclusion in
section 101.061, which relates to acts or omissions occurring before January 1,
1970, must be applied to section 101.059, which relates to claims based on the
theory of attractive nuisance, even when the act or omission did not occur
before 1970.  See Tex. Civ. Prac. & Rem. Code Ann. ' 101.059,  .061 (Vernon 1997).  Todaro argues because both sections state the
Act Adoes not apply@ to the type of
claim at issue, the ramifications of both exclusions should be the same.  Therefore, she contends because courts resort
to common law to decide sovereign immunity issues involving pre-1970 acts or
omissions, they similarly should resort to common law to decide claims of
attractive nuisance. We disagree.

The supreme court has cautioned,  AEach of the . . .
exemptions . . . is a distinct exemption, complete unto itself.  We agree with the . . . statement that courts
must examine the entire [Tort Claims] Act. 
This rule of construction, however, does not permit courts to engraft
the limitations of one statutory provision onto another.@  State v. Terrell, 588 S.W.2d 784, 788B89 (Tex. 1979)
(citation omitted).[3]  In relying on cases construing the section
101.061 exclusion (regarding pre-1970 acts or omissions), appellant fails to
appreciate the distinction between negligent acts and omissions occurring before
1970 and those occurring after 1970.

As this court explained in Chapman v.
City of Houston, AClearly [section] 101.061 intended to
provide for abolishment of governmental immunity without causing havoc.@  839 S.W.2d 95, 99 (Tex. App.CHouston [14th
Dist.] 1992, writ denied).  The rationale
for applying the common law for pre-1970 acts and omissions  rests on the premise it would be unfair to
expose a governmental entity to liability under the Act for acts or omissions
for which it had previously been immune at common law.  Lawrence, 906 S.W.2d at 116.  Thus, the cases applying common law for
pre-1970 acts and omissions are consistent with the presumption in favor of retaining
immunity.  See Taylor, 106 S.W.3d
at 697 (regarding presumption in construction of statutes purportedly waiving
sovereign immunity).








In contrast, the purpose of section
101.059 was to eliminate an area of potential governmental liability that may
have existed at common law.[4]  In an early draft of the Act, the Legislature
abolished the doctrine of attractive nuisance only in rural areas and only in
limited cases.  See J. Bonner
Dorsey, Whither the Texas Tort Claims Act: What Remains After Official
Immunity?, 33 St. Mary=s L.J. 235, 244 n. 44
(2002) (quoting Veto Message of Gov. Preston Smith, Tex. H.B. 117, H.J. of Tex,
61st Leg., R.S. (1969)).  Governor
Preston Smith, however, vetoed this bill. 
See id. at 243.  In
his veto message, Governor Smith expressed his concern with the breadth of the
total bill and the burden it imposed on Texas taxpayers.  See Joe R. Greenhill & Thomas V.
Murto III, Governmental Immunity, 49 Tex.
L. Rev. 462, 467 (1971). 
Moreover, Governor Smith specifically recommended that the Legislature A>[a]bolish the
doctrine of attractive nuisance as applied against governmental units in all
cases.=@ Dorsey, supra at
244 n.44.  The subsequently enacted bill
did so.  See Dorsey, supra,
at 244; see also Tex. Civ. Prac.
& Rem. Code Ann. ' 101.059 (Vernon
1997).








Lawrence is the only case
Todaro cites in which a court resorted to the common law to analyze an
attractive nuisance claim against a city.[5]  The attractive nuisance in Lawrence,
however, was a concrete syphon constructed before 1970, and the section 101.061
exclusion was applicable.  Lawrence,
906 S.W.2d at 115, 116.  Therefore, as
subsequently confirmed in Likes, resort to common law was appropriate
under section 101.061 regardless of the implications of the section 101.059
exclusion for attractive nuisance; the common law applied because the syphon
was allegedly negligently constructed before 1970.  Id. at 116B17; see Likes,
962 S.W.2d at 501 (citing Lawrence for proposition common law governs
causes of action occurring before January 1, 1970, the effective date of the
Tort Claims Act).  Without a pre-1970 act
or omission supporting her claim to trigger application of the common law,
Todaro=s claims are
subject only to the Act and its exclusions. 
See Adams, 888 S.W.2d at 614.

Given the preceding authority and
considerations, we decline Todaro=s invitation to
apply case law construing section 101.061, relating to pre-1970 acts or
omissions, to her claims based on acts or omissions occurring after 1970.  Her claims are specifically excluded from
being brought under the Act by section 101.059. 
Thus, Todaro=s claims do not fall under the waiver of
immunity created by the Tort Claims Act. 
Accordingly, we overrule Todaro=s issue one.

Todaro=s remaining
issues.  In issue two, Todaro raises
questions related to application of Texas Civil Practice and Remedies Code
chapter 75, commonly known as the recreational use statute.  Our analysis of the City=s liability,
however, does not reach the recreational use statute unless we first determine
that Todaro=s claims fall under the waiver of immunity
created by the Tort Claims Act.  City
of Houston v. Morua, 982 S.W.2d 126, 130 (Tex. App.CHouston [1st
Dist.] 1998, no pet.), overruled on other grounds by Smith v. Brown, 51
S.W.3d 376, 381 (Tex. App.CHouston [1st
Dist.] 2001, pet. denied); see Tex.
Civ. Prac. & Rem. Code Ann. ' 75.003(g) (Vernon
Supp. 2004) (stating, ATo the extent that this chapter limits the
liability of a governmental unit under circumstances in which the governmental
unit would be liable under Chapter 101, this chapter controls@) (emphasis
added).   As discussed above, we concluded Todaro=s claims do not
fall under the waiver of immunity created by the Tort Claims Act.  Accordingly, we need not reach Todaro=s issue two.

In issue three, Todoro argues the fact
Blake was not a trespasser or injured by a device or machinery does not
preclude application of the attractive nuisance doctrine to her case.  Throughout the preceding discussion, we have
treated Todaro=s claims as based on attractive nuisance,
as she would have us do.  So treated,
Todaro=s claims fall
squarely within the exclusion of Texas Civil Practice and Remedies Code section
101.059, and Todaro=s issue three presents nothing further for
review.








CONCLUSION

We conclude Todaro=s claims fall
within an exception to the waiver of governmental immunity in the Tort Claims
Act and that her claims, based on post-1970 acts or omissions, are not to be
determined under common law analysis. 
The trial court therefore correctly granted the City=s plea to the
jurisdiction and dismissed Todaro=s claims based on
attractive nuisance.

We affirm the judgment of the trial court.

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment
rendered and Opinion filed April 20, 2004.

Panel
consists of Justices Yates, Anderson, and Hudson.











[1]  See Tex. Civ. Prac. & Rem. Code Ann. '' 101.001B.109
(Vernon 1997 & Supp. 2004).





[2]  See Tex. Civ. Prac. & Rem. Code Ann. ' 75.001 (Vernon Supp. 2004).





[3]  In Terrell,
the supreme court was interpreting the predecessors to present sections 101.055
(regarding claims based on responses to emergency calls or situations) and .057
(regarding claims based on injury or death arising from civil disobedience,
riot, etc.).  See State v. Terrell, 588 S.W.2d 784, 788B89 (Tex. 1979) (interpreting Act of May 14, 1969, 61st Leg., R.S., ch. 292 ' 14 (8), (9), 1969 Tex. Gen. Laws
874, 878 (subsequently repealed and recodified) (current version at Tex. Civ. Prac. & Rem. Code Ann. '' 101.055, 057 (Vernon 1997)).





[4]  In cases
decided prior to the Tort Claims Act, however, plaintiffs asserting the
doctrine of attractive nuisance against governmental units were generally not
successful.  See, e.g.,  Bennett v. Brown County Water Imp. Dist.
No. 1, 153 Tex. 599, 272 S.W.2d 498 (1954); Gotcher v. City of
Farmersville, 137 Tex. 12, 151 S.W.2d 565 (1941); Woolf v. City of
Dallas, 311 S.W.2d 78 (Tex. Civ. App.CDallas
1958, writ ref=d n.r.e.); Murphy v. City of Rotan, 139 S.W.2d
134 (Tex. Civ. App.CEastland 1940, writ dism=d); Braissaird
v. Webb County, 128 S.W.2d 475, 477 (Tex. Civ. App.CSan Antonio 1939, no writ).





[5]  The exclusions
and exceptions to the Tort Claims Act are set forth in sections 101.051 through
101.066.  See Tex. Civ. Prac. & Rem. Code Ann. '' 101.051B.066
(Vernon 1997 & Supp.  2004).