

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-20-00116-CV

---

**TEXAS A&M UNIVERSITY SYSTEM, APPELLANT**

**V.**

**KRISTOPHER LLOYD FRALEY, APPELLEE**

---

On Appeal from the 361st District Court
Brazos County, Texas[1]
Trial Court No. 17-003236-CV-361, Honorable Steven Lee Smith, Presiding

---

July 30, 2021

## MEMORANDUM OPINION

Before QUINN, C.J.,[2] and PIRTLE and PARKER, JJ.

Appellant, Texas A&M University System ("TAMU"), appeals from the trial court's order denying its plea to the jurisdiction. We reverse the decision of the trial court.

---

[1] Pursuant to the Texas Supreme Court's docket equalization efforts, this case was transferred to this Court from the Tenth Court of Appeals. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013).

[2] Chief Justice Brian Quinn, not participating.

## I. Background

Kristopher Fraley sued TAMU under the Texas Tort Claims Act ("TTCA"), seeking damages for personal injuries he sustained in a one-vehicle accident on TAMU's Rellis Campus. *See* TEX. CIV. PRAC. & REM. CODE 101.002-101.020 (West 2019 & West Supp. 2020). Fraley asserted that TAMU removed a portion of an asphalt roadway on the campus, changing a four-way intersection into a T-intersection. Fraley crashed his vehicle after proceeding through the intersection onto the area where the roadway previously had been.

TAMU filed a plea to the jurisdiction claiming governmental immunity. The trial court denied TAMU's plea by an order dated January 10, 2020. TAMU filed a verified motion to extend the post-judgment deadlines pursuant to Texas Rule of Civil Procedure 306a.5 on March 5, 2020, asserting that it did not receive or acquire notice of the January 10 order until February 25.[3] *See* TEX. R. APP. P. 4.2(a). The trial court orally granted the motion for an extension at a March 16 hearing, and TAMU filed a notice of appeal that same day.

On May 1, 2020, we notified the parties that the clerk's record did not contain a signed order from the trial court as required by Rule 4.2(c) of the Texas Rules of Appellate Procedure. We advised the parties that the appeal would be dismissed for want of jurisdiction unless TAMU filed a supplemental clerk's record containing such an order by May 15. After receiving our directive, TAMU promptly moved for entry of a 306a order in

---

[3] An interlocutory order that grants or denies a plea to the jurisdiction by a governmental unit is an accelerated appeal; as such, the notice of appeal is due within 20 days. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West Supp. 2020); TEX. R. APP. P. 26.1(b), 28.1(a).

the trial court. However, Fraley opposed the motion, arguing that the trial court was both (1) without jurisdiction to sign an order on the motion and (2) prohibited from ruling on it under the automatic stay imposed by section 51.014(b) of the Civil Practice and Remedies Code.[4] TAMU moved this Court to lift any stay to allow the trial court to sign the 306a order. We then abated the appeal and remanded the cause to the trial court to conduct a hearing and enter a written order of its findings regarding the date on which TAMU first received notice or acquired actual knowledge of the order denying its plea to the jurisdiction. *See Tex. A&M Univ. Sys. v. Fraley*, No. 07-20-00116-CV, 2020 Tex. App. LEXIS 3896, at *4-5 (Tex. App.—Amarillo May 7, 2020, order) (per curiam).

Following a hearing on May 8, the trial court entered a "Supplemental Findings Order" on May 12, 2020, in which it recited that it found that TAMU first acquired actual knowledge of the signing of the January 10 order on February 25, 2020. The trial court's order further stated, "This actual finding is consistent with the basis on which this Court granted the Motion to Enlarge Time on March 16, 2020." A supplemental record containing the written finding was timely filed, and this Court reinstated the appeal.

In its sole issue on appeal, TAMU contends the trial court erred in denying its plea to the jurisdiction.

---

[4] Section 51.014(b) provides that an interlocutory appeal from an order denying a plea to the jurisdiction by a governmental unit stays the commencement of a trial and all other proceedings in the trial court pending resolution of the appeal. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8), (b).

## II. Timeliness of Appeal

We recite the procedural background of this case because it is pertinent to our analysis of Fraley's cross-point, in which he argues that we lack jurisdiction over this appeal, and which we accordingly address first. *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012) (noting that if court does not have jurisdiction, its opinion addressing any issues other than jurisdiction is advisory). Fraley does not dispute that TAMU timely filed its motion pursuant to 306a and filed its notice of appeal within 20 days of February 25, 2020, the date TAMU acquired knowledge of the trial court's order. Rather, Fraley contends that TAMU failed to secure an appropriate Rule 306a order to extend its deadline to file a notice of appeal. He maintains that TAMU never requested a ruling from the trial court on its motion to extend time as to the date TAMU had notice or actual knowledge of the trial court's order until May of 2020. Fraley asserts that the trial court's Supplemental Findings Order does not indicate that the trial court was memorializing a finding it had made at the March 16 hearing but instead notes it is based on evidence produced at the May 8 hearing. He continues, "[U]nder § 51.014 of the Civil Practice and Remedies Code, the trial court was without jurisdiction to make such a finding in May, after filing of the Notice of Appeal in March." Thus, Fraley concludes, TAMU failed to meet its burden to obtain the requisite finding in time to extend its deadline, leaving this Court without jurisdiction over this appeal.

For the following reasons, we disagree with Fraley's contention. The Texas Supreme Court has explained that a sworn motion complying with Rule 306a "establishes a prima facie case that the party lacked timely notice and invokes a trial court's otherwise-expired jurisdiction for the limited purpose of holding an evidentiary hearing to determine

4

the date on which the party or its counsel first received notice or acquired knowledge of the judgment." *In re Lynd Co.*, 195 S.W.3d 682, 685 (Tex. 2006) (orig. proceeding). The high court has also held that the trial court's duty to hold the hearing and make a determination of the relevant date is subject to mandamus review. *See Cantu v. Longoria*, 878 S.W.2d 131, 132 (Tex. 1994) (orig. proceeding) (per curiam) (conditionally granting mandamus relief to require trial court to hold hearing and make finding under predecessor rule to Rule 306a, when trial court failed to hold hearing on motion). In *Cantu*, the Supreme Court in June of 1994 directed the trial court to hold a hearing on a motion to extend time, make the requisite finding, and include that finding in an order. *See id.* The motion at issue in *Cantu* had been filed on October 21, 1993, based on the allegation that the movant did not become aware of the judgment until September 21, 1993. *Id.* at 131. Based on the timing of events, the trial court necessarily would have had to hold the hearing, make the finding, and include its finding in an order well after the trial court's revived plenary power had expired. *See id.* In our view, the Supreme Court would not have directed the trial court to so proceed if the expiration of the trial court's revived plenary power had extinguished its jurisdiction to take those actions.

We agree with the holdings of our fellow courts of appeals which have held that a trial court retains limited jurisdiction to sign an order making a finding as to the date a party first learned of a judgment once its plenary power has been revived by an appellant's 306a motion. *See Latter & Blum of Tex., LLC v. Murphy*, No. 02-17-00463-CV, 2019 Tex. App. LEXIS 6983, at *18-20 (Tex. App.—Fort Worth Aug. 8, 2019, pet. denied) (mem. op.) (where appellant filed timely 306a motion, set hearings on motion within trial court's revived plenary power, and trial court conducted hearing within revived plenary power but

declined to make requisite finding, trial court nonetheless had limited jurisdiction beyond plenary power period to sign written order finding date when appellant first learned of underlying judgment); *Johnson Cty. Special Util. Dist. v. Pub. Util. Comm'n of Tex.*, No. 03-17-00160-CV, 2018 Tex. App. LEXIS 3328, at *12-16 (Tex. App.—Austin May 11, 2018, pet. denied) (mem. op.) (where appellant requested hearing on 306a motion within 30 days of alleged date of notice, but trial court did not hold hearing, rule on 306a motion, or sign an order finding date of notice until after its revived plenary power had expired, order was not void and was effective to extend appellant's deadline for notice of appeal under Rule 4.2). This approach is consistent with our own decisions. *See PDG, Inc. v. Abilene Vill., LLC*, No. 07-19-00118-CV, 2019 Tex. App. LEXIS 3129, at *3 (Tex. App.— Amarillo Apr. 17, 2019, order) (per curiam) (abating appeal and remanding cause to trial court to enter finding in accordance with Rule 4.2(c)).

Moreover, we are not swayed by Fraley's argument that the trial court was without jurisdiction to make its finding in May because section 51.014 of the Civil Practice and Remedies Code "constrains the trial court's authority to act on a prior ruling . . . when an interlocutory appeal is pending." Fraley cites the Supreme Court's decision in *In re Panchakarla* as authority for this argument. *See In re Panchakarla*, 602 S.W.3d 536, 540 (Tex. 2020) (orig. proceeding) (per curiam). However, the *Panchakarla* decision addresses a trial court's plenary authority to vacate a timely grant of a motion made pursuant to the Texas Citizens Participation Act ("TCPA"). *See id.* It does not address the consequences of a trial court's failure to sign a written order following a hearing held pursuant to Rule 306a. Furthermore, at the time the trial court signed its order on May 12, this Court had abated TAMU's interlocutory appeal and remanded the case to the trial

6

court. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 206 (Tex. 2001) (appellate court can abate appeal to permit clarification of order by trial court). Therefore, we are not persuaded that section 51.014 prohibits the action taken by the trial court here.

Finally, we find Fraley's claim that TAMU failed to meet its burden to ask for and obtain the requisite finding to be unavailing. Under Rule 306a, TAMU was "required to prove in the trial court, on sworn motion and notice, the date on which the party or his attorney first either received a notice of the judgment or acquired actual knowledge of the signing and that this date was more than twenty days after the judgment was signed." Tex. R. Civ. P. 306a.5. TAMU filed its sworn motion alleging it acquired knowledge of the order denying its plea to the jurisdiction on February 25, 2020, and, upon hearing, obtained an oral ruling granting the motion. Fraley directs us to no evidence in the record controverting TAMU's evidence that it acquired knowledge on February 25. *See In re Lynd Co.*, 195 S.W.3d at 686 (where court does not state date for notice, finding may be implied from court's order, unless there is no evidence supporting the implied finding or opposing party establishes an alternate date as a matter of law). The requirement for a written order does not arise from Rule 306a, but rather from Rule 4.2 of the Rules of Appellate Procedure, which imposes the duty to provide an order on the trial court: "After hearing the motion, the trial court *must* sign a written order that finds the date when the party or the party's attorney first either received notice or acquired actual knowledge that the judgment or order was signed." Tex. R. App. P. 4.2(c) (emphasis added). In short, the appellant is obligated under Rule 306a to timely prove the relevant date, and the trial court is obligated under Rule 4.2 to sign a written order finding that date. *See Latter & Blum of Tex.*, 2019 Tex. App. LEXIS 6983, at *15 ("[R]ule 4.2 does not merely require the

7

party to obtain such an order; it expressly requires the trial court to sign one."); *see also Garza v. Tex. Alcoholic Beverage Comm'n*, 89 S.W.3d 1, 8 (Tex. 2002) (assuming that "[l]egislature did not intend to deprive a party of appellate remedies on the sole ground that the district court was unable or unwilling to perform its statutory duty").

On the facts before us, we hold that TAMU complied with its obligations under the rules to extend the deadline for filing its notice of appeal. We thus conclude TAMU's notice of appeal was timely and turn to the merits of its appeal.

### III. Plea to the Jurisdiction

### A. Standard of Review

As a governmental entity, TAMU is generally immune from both suit and liability for negligence unless that immunity is waived. *See Tex. A&M Univ. v. Bishop*, 156 S.W.3d 580, 583 (Tex. 2005); *Univ. of Tex. at El Paso v. Moreno*, 172 S.W.3d 281, 284 (Tex. App.—El Paso 2005, no pet.). A governmental entity may challenge whether the plaintiff raises an exception to governmental immunity through a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). In this appeal, TAMU argues that the trial court erroneously denied its plea to the jurisdiction. Our review of a trial court's ruling on a plea to the jurisdiction is de novo. *Id.* at 226.

Fraley contends that the trial court's denial of TAMU's plea to the jurisdiction should be affirmed because TAMU has "failed to provide *any* evidence to support its challenges to the jurisdictional facts." However, a plaintiff has the initial burden of alleging facts that affirmatively demonstrate that the trial court has subject matter jurisdiction. *City of Fort Worth v. Robinson*, 300 S.W.3d 892, 895 (Tex. App.—Fort Worth 2009, no pet.).

8

Accordingly, because a governmental unit has immunity from suit, a plaintiff asserting a claim against a governmental unit must allege facts that affirmatively demonstrate that the legislature has waived immunity for the claims brought. *State v. Lueck*, 290 S.W.3d 876, 884 (Tex. 2009).

A plea to the jurisdiction might attack the face of the pleading, challenging the sufficiency of the plaintiff's pleadings to demonstrate jurisdiction, or it may include evidence that thereby places into issue the existence of a jurisdictional fact. *Miranda*, 133 S.W.3d at 226-27; *College of the Mainland v. Glover*, 436 S.W.3d 384, 391 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Here, TAMU's plea contended that Fraley's claims challenged a discretionary decision by TAMU not to install a traffic signal or other signage after the completion of its road-removal project. TAMU argues that all of Fraley's claims are encompassed by TAMU's discretionary policy decisions. The plea focused on Fraley's pleaded allegations as there was no evidence submitted in support of the plea.

In determining a plea to the jurisdiction challenging the pleadings, i.e., asserting that the plaintiff has not met his burden to demonstrate jurisdiction, we look at the allegations in the plaintiff's pleadings and construe them liberally in favor of the plaintiff.[5] *Miranda*, 133 S.W.3d at 226-27; *see also City of Austin v. Frame*, No. 03-15-00292-CV, 2017 Tex. App. LEXIS 4104, at *6 (Tex. App.—Austin May 5, 2017, pet. denied) (mem. op.) ("A plea to the jurisdiction often may be determined solely from the pleadings and

---

[5] The summary-judgment-like standard involving shifting evidentiary burdens only applies when the plea to the jurisdiction challenges the existence of jurisdictional facts, as opposed to the sufficiency of the pleadings. *See Miranda*, 133 S.W.3d at 227-28.

9

sometimes must be."). We determine as a matter of law whether the pleader has alleged facts establishing jurisdiction. *Sanders v. City of Grapevine*, 218 S.W.3d 772, 777 (Tex. App.—Fort Worth 2007, pet. denied).

## B. Fraley's Pleadings

Fraley claims his injuries resulted from an ordinary premises defect, or alternatively, a special defect. In his petition,[6] Fraley alleged:

> A condition was present on the premises in question which posed an unreasonable risk of harm and also constituted a "Special Defect" under the TTCA. Specifically, Defendants had removed a stretch of road on the north side of the intersection of Avenue B and Sixth Street in College Station, Texas. Plaintiff was unaware of this dangerous condition and proceeded onto this section of roadway, sustaining several personal injuries.

Fraley claimed that TAMU failed to adequately warn drivers of the road's alteration, to adequately light the area, to guide drivers away from the area, to properly barricade the area, and to make the condition reasonably safe.

## C. Texas Tort Claims Act

The legislature has provided a limited waiver of immunity via the TTCA for two categories of claims that allege dangerous conditions on real property: premises defects and special defects. TEX. CIV. PRAC. & REM. CODE ANN. § 101.022 (West 2019). If a claim arises from a premises defect, the governmental unit owes to the claimant only the duty a private person owes a licensee on private property. *Id.* The government must use ordinary care to warn a licensee, or to make reasonably safe a dangerous condition of

---

[6] We refer to Fraley's third amended petition, which is his live pleading, as the "petition."

which the government is aware and the licensee is not. *City of Weston v. Gaudette*, 287 S.W.3d 832, 836 (Tex. App.—Dallas 2009, no pet.). The plaintiff must show the defendant knew that the dangerous condition existed at the time of the accident. *Id.* If the condition is a special defect, the governmental unit owes the duty that a private person owes to an invitee. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(b). In those cases, the government owes a duty to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition of which the government knew or reasonably should have known. *City of Dallas v. Reed*, 258 S.W.3d 620, 622 (Tex. 2008) (per curiam).

Premises Defects

TAMU asserts that an action based on a premises defect or special defect cannot be maintained because Fraley's complaints relate to discretionary acts for which it is immune from liability. Though the TTCA provides a waiver of immunity for premises defects, the waiver is subject to exceptions and exclusions. For example, section 101.056 excludes claims based on the governmental unit's exercise of discretionary powers. TEX. CIV. PRAC. & REM. CODE ANN. § 101.056 (West 2019). The purpose of the exception "is to avoid judicial review or interference with those policy decisions committed to the other branches of government." *Stephen F. Austin Univ. v. Flynn*, 228 S.W.3d 653, 657 (Tex. 2007).

Texas courts have consistently held that the design of a roadway, the decision whether to install safety features, and the decision to regulate traffic by signs, barricades, or other means, are discretionary decisions for which the State cannot be sued under

11

section 101.056. *See Texas Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002) (per curiam) (Department of Transportation retained immunity for decisions concerning slope of median and lack of safety features such as barriers or guardrails); *State v. San Miguel*, 2 S.W.3d 249, 251 (Tex. 1999) (per curiam) (State immune from suit over use of barrels to warn of missing guardrail because "[d]ecisions about highway design and about what type of safety features to install are discretionary policy decisions"); *French v. Johnson Cty.*, 929 S.W.2d 614, 617 (Tex. App.—Waco 1996, no writ) (county's decision not to install guardrails, replace bridge, or post warnings was discretionary function for which immunity not waived); *Wenzel v. City of New Braunfels*, 852 S.W.2d 97, 99-100 (Tex. App.—Austin 1993, no writ) (State immune in suit concerning decision not to install barricade, warning sign, or other device to regulate traffic at county fair); *Villarreal v. State*, 810 S.W.2d 419, 420-21 (Tex. App.—Dallas 1991, writ denied) (immunity retained in case concerning placement of exit ramp sign); *Stanford v. State Dep't of Highways & Pub. Transp.*, 635 S.W.2d 581, 582 (Tex. App.—Dallas 1982, writ ref'd n.r.e.) ("construction of guardrails on an existing overpass is similar to changing the design of the overpass" and design change is discretionary).

These cases illustrate that the exclusion for discretionary actions under section 101.056 applies to suits attempting to hold governmental units responsible for premises defects. For example, in *Ramirez,* the plaintiff brought premises defect claims alleging that the Department of Transportation had failed to correct or warn of a dangerous condition allegedly created by a highway median's slope and the absence of safety features between opposing lanes of traffic. *Ramirez*, 74 S.W.3d at 865-66. The Texas Supreme Court dismissed the claims, finding them barred by sovereign immunity. *Id.* at

12

867-68. The court reiterated that the design of a public work like a roadway is a discretionary function involving many policy decisions, and the governmental entity responsible may not be sued for such decisions. *Id.* at 867. Further, decisions about the installation of safety features are discretionary decisions for which the entity may not be sued. *Id.* Under *Ramirez*, Fraley's allegation that TAMU knew of a dangerous condition created by the redesigned intersection does not bar the application of the discretionary function exclusion stated in section 101.056.

Fraley also maintains that his complaint is not about the discretionary policy decision to turn the four-way intersection into a T-intersection. He asserts that his complaint is instead about "the *way* the road was removed, and that it remained essentially unlit, unmarked, and unbarricaded . . . ." However, Fraley does not assert that TAMU was negligent in the manner in which it removed the road, but rather that the completed project lacked particular design or safety features. The placement or non-placement of lighting, markings, and barricades are features of the roadway's design, not deficiencies in carrying it out. *See Ramirez*, 74 S.W.3d at 867; *San Miguel*, 2 S.W.3d at 254. Thus, to the extent that Fraley attempts to recast his claim as one for negligent implementation, we reject such a claim.[7]

---

[7] Texas law makes a distinction between "negligent formulation of policy, for which sovereign immunity is preserved, and the negligent implementation of policy, for which immunity is waived." *Flynn*, 228 S.W.3d at 657. Whether an act is a matter of formation or implementation is a question of law. *Id.* The negligent implementation theory of liability does not itself waive immunity. *Guadalupe-Blanco River Auth. v. Pitonyak*, 84 S.W.3d 326, 342 (Tex. App.—Corpus Christi 2002, no pet.).

13

We conclude that TAMU's decisions to eliminate a roadway and not install new traffic control or safety devices are discretionary roadway design decisions excluded from liability under the TTCA.

Special Defects

However, even if a governmental entity makes a discretionary decision, when a resulting condition constitutes a special defect, the governmental unit has an obligation to place a warning device; otherwise, it waives its immunity. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.060(c) (West 2019). TAMU asserts that Fraley did not plead and prove a special defect as required to show a waiver of sovereign immunity.

The TTCA does not define "special defects," but likens them to conditions that fall within the same kind or class as an excavation or obstruction. TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(b). They are distinguished by "some unusual quality outside the ordinary course of events." *Reed*, 258 S.W.3d at 622. They may present an unexpected and unusual danger to ordinary users of roadways, *State Dep't of Highways and Pub. Transp. v. Payne*, 838 S.W.2d 235, 238 (Tex. 1992), or "unexpectedly and physically impair a car's ability to travel on the road." *State v. Rodriguez*, 985 S.W.2d 83, 85 (Tex. 1999) (per curiam). Whether a condition is a special defect is a matter of law. *Payne*, 838 S.W.2d at 238.

In *Denton County v. Beynon*, the Texas Supreme Court reaffirmed that conditions can be special defects "only if they pose a threat to the ordinary users of a particular roadway." 283 S.W.3d 329, 331 (Tex. 2009) (citing *Payne*, 838 S.W.2d at 238 n.3). *Beynon* involved a driver on an unlit, undivided two-lane road who swerved to avoid a

14

collision with an oncoming vehicle. The driver's vehicle was then impaled by a seventeen-foot county-owned floodgate arm that was located approximately three feet off the roadway and pointed toward oncoming traffic. *Id.* at 330-31. Both the trial court and the appellate court concluded that the floodgate arm constituted a special defect, but the Supreme Court disagreed. In its analysis, the court wrote that the arm:

> did not "pose a threat to the ordinary users of [the roadway]," or prevent ordinary users from traveling on the road (as opposed to skidding off the road). Our cases rest on the objective expectations of an "ordinary user," and such a driver would not be expected to careen uncontrollably off the paved roadway and into the adjoining grass . . . .

*Id.* at 332 (footnote omitted). The court noted that the floodgate arm was not a condition that forced the driver's car off the road initially nor was it a condition that caused the car to skid sideways and crash. *Id.* Following *Beynon*, "[o]ur special-defect jurisprudence turns on the objective expectations of an 'ordinary user' who follows the 'normal course of travel.'" *Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010).

The redesign of the intersection and removal of a portion of the former roadway does not fit within the same class as an obstruction or excavation. The condition did not impede normal travel on the existing roadway, nor did it present an unusual or unexpected danger. Fraley's mistakenness about where the road ended does not mean that the existing road was a dangerous condition similar to an excavation or obstruction that posed a threat to an ordinary driver. An ordinary user would not be expected to proceed deliberately across a T-intersection, beyond the paved roadway.

Fraley has not demonstrated the existence of a special defect in this case. Accordingly, we hold that the TTCA does not waive TAMU's immunity from suit.

15

<u>Condition or Use of Tangible Personal Property</u>

Fraley also argues that TAMU did not address his alternative claim that TAMU's sovereign immunity was waived because Fraley's claim involves personal injury caused by a condition or use of tangible personal property. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021. TAMU responds that Fraley has not pleaded facts giving rise to a misuse of tangible personal property claim. We agree. Fraley's petition states that sovereign immunity is waived "for claims involving personal injury caused by a condition or use of tangible or real property," but the petition does not actually contain allegations of a misuse of tangible personal property. Fraley's petition only raises the prospect of a dangerous condition or special defect on TAMU's real property. Therefore, we conclude that Fraley has not demonstrated that his claims arising from the condition or use of tangible personal property fit within the waiver created by the TTCA.

## Conclusion

Fraley has not demonstrated a waiver of sovereign immunity by TAMU for an act falling under the TTCA. A plaintiff generally deserves a reasonable opportunity to amend defective pleadings unless the pleadings demonstrate incurable defects or negate the existence of jurisdiction. *Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007). We conclude that an amended petition could not cure the jurisdictional defects in Fraley's petition. Accordingly, we reverse the judgment of the trial court and dismiss Fraley's claims for lack of jurisdiction.

Judy C. Parker
Justice

16